IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

```
ROBERTO LARA ZAVALA,              )
                                  )
              Plaintiff,          )
                                  )
                                  ) Case No. CIV-19-232-KEW
                                  )
COMMISSIONER OF THE SOCIAL        )
SECURITY ADMINISTRATION,          )
                                  )
              Defendant.          )
```

**OPINION AND ORDER**

Plaintiff Roberto Lara Zavala (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that he was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is AFFIRMED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairments are of such severity that he is not only unable to do his previous work

but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. § 423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) (citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally, Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also*, *Casias*, 933 F.2d at 800-01.

## Claimant's Background

Claimant was 50 years old at the time of the ALJ's decision. He has a sixth-grade education and worked in the past as a heavy equipment operator and brick making machine operator. Claimant alleges an inability to work beginning on November 1, 2014, due to limitations resulting from head and neck pain, shoulder pain, back pain, pain in his feet, arthritis in the hips, knees, and hands, shortness of breath, and depression.

## Procedural History

On June 14, 2016, Claimant protectively filed an application for supplemental security income benefits pursuant to Title XVI (42 U.S.C. § 1381, *et seq*.) of the Social Security Act. He filed an application for a period of disability and disability insurance

benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act on June 22, 2016. Claimant's applications were denied initially and upon reconsideration. On July 20, 2018, ALJ B.D. Crutchfield conducted an administrative hearing by video from Tulsa, Oklahoma. Claimant participated from Muskogee, Oklahoma. A Spanish interpreter participated by telephone. On September 6, 2018, the ALJ entered an unfavorable decision. Claimant requested review by the Appeals Council, and on May 14, 2019, it denied review. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made her decision at step five of the sequential evaluation. She determined that while Claimant suffered from severe impairments, he did not meet a listing and retained the residual functional capacity ("RFC") to perform light work, with additional limitations.

## Errors Alleged for Review

Claimant asserts the ALJ committed error by (1) failing to properly consider the effects of all his impairments at step two, leading to errors at later steps; (2) failing to take into account all of Claimant's mental and physical impairments in the RFC assessment; (3) failing to properly apply the Medical-Vocational Guidelines (the "grids") and finding Claimant disabled; and (4)

failing to properly consider Claimant's limited ability to communicate in English and the effect on his ability to perform other work at step five.

### Step Two and Step Four

In her decision, the ALJ found Claimant suffered from severe impairments of degenerative disc disease, degenerative joint disease, and depressive disorder. (Tr. 21). She determined Claimant could perform light work with additional limitations. Claimant could lift and/or carry twenty pounds occasionally and ten pounds frequently. He could stand and/or walk for six hours in an eight-hour workday and sit for six hours in an eight-hour workday, both with normal breaks. Claimant could not climb ladders, ropes, or scaffolds, but he could frequently climb ramps and stairs. Claimant could not crouch, but he could occasionally kneel or crawl. He was to avoid concentrated exposure to hazards, including unprotected heights and moving machinery. Claimant retained the capacity to perform work "where interpersonal contact [was] incidental to the work performed." He could perform simple tasks "learned by rote with variables and little judgment required." Claimant could work under simple, direct, and concrete supervision, but he could not relate to the general public. He could adapt to a work situation. (Tr. 23).

After consultation with a vocational expert ("VE"), the ALJ determined Claimant could perform the representative jobs of bakery

worker, small product assembler, and produce sorter, all of which the ALJ found existed in sufficient numbers in the national economy. (Tr. 32). As a result, the ALJ concluded Claimant was not under a disability from November 1, 2014, through the date of the decision. *Id*.

Claimant argues the ALJ failed to consider all his impairments at step two, which resulted in errors at the subsequent steps of the sequential analysis. Specifically, Claimant focuses on Claimant's obesity and shoulder pain.

The focus of a disability determination is on the functional consequences of a condition, not the mere diagnosis. *See*, *e.g.*, *Coleman v. Chater*, 58 F.3d 577, 579 (10th Cir. 1995)(the mere presence of alcoholism is not necessarily disabling, the impairment must render the claimant unable to engage in any substantial gainful employment.); *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988)(the mere diagnosis of arthritis says nothing about the severity of the condition), *Madrid v. Astrue*, 243 Fed. Appx. 387, 392 (10th Cir. 2007) (the diagnosis of a condition does not establish disability, the question is whether an impairment significantly limits the ability to work); *Scull v. Apfel*, 221 F.3d 1352 (10th Cir. 2000) (unpublished), 2000 WL 1028250, at *1 (disability determinations turn on the functional consequences, not the causes of a claimant's condition).

To the extent Claimant contends his obesity and shoulder pain should have been included as severe impairments at step two, where an ALJ finds at least one "severe" impairment, a failure to designate another impairment as "severe" at step two does not constitute reversible error because, under the regulations, the agency at later steps considers the combined effect of all of the claimant's impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. *Brescia v. Astrue*, 287 Fed. Appx. 626, 628-629 (10th Cir. 2008). The failure to find that additional impairments are also severe is not cause for reversal so long as the ALJ, in determining Claimant's RFC, considers the effects "of all of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'" *Id.*, quoting *Hill v. Astrue*, 289 Fed. Appx. 289, 291-292 (10th Cir. 2008).

Moreover, the burden of showing a severe impairment is "de minimis," yet "the mere presence of a condition is not sufficient to make a step-two [severity] showing." *Flaherty v. Astrue*, 515 F.3d 1067, 1070-71 (10th Cir. 2007), quoting *Williamson v. Barnhart*, 350 F.3d 1097, 1100 (10th Cir. 2003); Soc. Sec. R. 85-28. At step two, Claimant bears the burden of showing the existence of an impairment or combination of impairments which "significantly limits [his] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). An impairment which warrants disability

benefits is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(1)(D). The severity determination for an alleged impairment is based on medical evidence alone and "does not include consideration of such factors as age, education, and work experience." *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988). In this case, the ALJ did not end the sequential evaluation at step two by finding Claimant had no severe impairments. Since the ALJ did not deny benefits at step two based upon the lack of any severe impairments, her failure to include Claimant's obesity and shoulder pain as severe impairments does not constitute reversible error.

Further, although the ALJ did not find Claimant's obesity and shoulder pain were severe impairments at step two, she did consider them in the decision and in formulating the RFC. Regarding Claimant's obesity, the ALJ specifically considered that Claimant was 5'8" tall and weighed 243 pounds. (Tr. 21). Although she did not find Claimant's obesity was a severe impairment, she referenced Claimant's obesity throughout her discussion of the RFC. She noted that at the consultative examination by Conner Fullenwider, M.D., in August of 2016, Claimant weighed 246 pounds, and Dr. Fullenwider found Claimant's muscle strength was 5/5 in the upper and lower extremities bilaterally, he had no joint swelling, erythema,

8

effusion, tenderness, or deformity, and he was able to lift, carry, and handle light objects. Claimant had a normal neurologic exam with a decreased range of motion of his back and hips. (Tr.26, 1239-42). She gave Dr. Fullenwider's physical examination of Claimant great weight. (Tr. 30). She also referenced that at his evaluation by neurosurgeon Shihao Zhang, M.D., Claimant weighed 250 pounds and his BMI was 30. Dr. Zhang noted Claimant's strength was 5/5 bilaterally in all planes, he had no pain on lateral bending, flexion, or extension, and no tenderness to palpation. Straight leg raises bilaterally were negative to 90 degrees and there was negative pain on internal and external rotation of the bilateral hip joints and no tenderness to palpation to the hip. His ambulation was normal. (Tr. 27, 1260-62). She further discussed examinations of Claimant from January and March of 2018, wherein both physicians encouraged Claimant to lose weight. (Tr. 28, 1275, 1476-77).

The ALJ also appropriately considered Claimant's shoulder pain when assessing Claimant's RFC. She noted his complaints of shoulder pain as reflected in a 2016 Adult Disability Report and a 2017 Function Report – Adult. (Tr. 24, 309-10, 362). She also noted his testimony that his left shoulder hurt near the spinal bone. (Tr. 24, 61). The ALJ referenced Claimant's MRI of the left shoulder in February of 2017, noting the results, and that Claimant received a left shoulder injection in March of 2017. (Tr. 27, 1371-

72, 1376). The ALJ assigned great weight to the opinions of the state agency physicians who considered Claimant's shoulder pain and found limitations to light work with postural and environmental limitations but no reaching or manipulative limitations. (Tr. 29, 100-02, 114-16, 132-35, 151-54). She determined Claimant suffered from a severe impairment of degenerative joint disease (Tr. 21), and she noted that the RFC was supported by objective medical evidence "showing only mild and moderate findings[,]" Claimant had undergone no surgery since December of 2014, and records showed Claimant received relief from most of his injections. (Tr. 30).

Moreover, Claimant has not cited to any other evidence indicating other areas impacted by his obesity or shoulder pain or that he has additional functional limitations as a result. Thus, the Court finds the ALJ adequately considered Claimant's obesity and shoulder pain in the RFC.

### RFC Assessment

Claimant next argues the ALJ failed to account for all his mental and physical impairments in the RFC and their effects on his ability to perform substantial gainful activity. His first contention is that the ALJ's hypothetical questions failed to fully account for the opinions of the reviewing psychologists who determined Claimant suffered from depressive, bipolar, and related disorders. State agency psychologist Burnard Pearce, Ph.D., reviewed the record on October 18, 2016, and determined Claimant

had the mental RFC to perform simple routine tasks and could maintain an appropriate pace in a work setting performing simple tasks. Claimant could make basic decisions and should avoid common hazards in the work environment. He could maintain superficial relationships with co-workers and supervisors, handle superficial and limited contact with the public, but he would likely have trouble maintaining an appropriate pace working constantly with the public. (Tr. 103-104). On April 19, 2017, state agency psychologist Gary Lindsay, Ph.D., reviewed the record and determined Claimant had the mental RFC to perform work where interpersonal contact was incidental to the work performed. Claimant could perform simple tasks learned by rote with variables and little judgment required. He could work under supervision that was simple, direct, and concrete. He could not relate to the general public, but he could adapt to a work situation. (Tr. 135-37).

The ALJ determined Claimant had the mental RFC to "perform work where interpersonal contact is incidental to the work performed. He could perform simple tasks that were learned by rote with variables and little judgment required. He could work under supervision that was simple, direct, and concrete. He could not relate to the general public. He could adapt to a work situation. (Tr. 23). The ALJ noted in the decision that she afforded both opinions great weight. (Tr. 29). She posed two hypotheticals to

11

the VE at the hearing. The first hypothetical included the mental RFC from Dr. Pearce, and the second hypothetical included the mental RFC from Dr. Lindsay. (Tr. 65-67). Although the ALJ appears to have included the mental RFC of Dr. Lindsay in the actual language of the RFC, the VE testified that under both the hypotheticals, Claimant could perform the jobs of bakery worker, product assembler, and produce sorter. *Id*. The Court finds no error in this regard, as Claimant can perform the jobs identified by the VE under either hypothetical.

Claimant also argues that his shoulder impairments preclude him from lifting and carrying the ten to twenty pounds required by light work, and the ALJ failed to include other limitations related to his shoulder impairments in the RFC, including reaching and handling limitations. As previously discussed herein, although she did not consider it a severe impairment, the ALJ considered Claimant's shoulder pain and accounted for it in the RFC.

Claimant further asserts that the number of jobs the ALJ found Claimant could perform in the national economy was not significant, especially in light of the ALJ's failure to consider all his impairments in the RFC. The VE testified Claimant could perform the light jobs of (1) bakery worker with 25,000 jobs in the national economy; (2) small product assembler with 190,000 in the national economy; and (3) produce sorter with 45,000 in the national economy. Claimant contends that even if he could perform

12

all three of the jobs, 260,000 job in the national economy is not significant.

"[T]he number of jobs that contributes to the 'significant number of jobs' standard looks to the national economy-not just a local area." *Raymond v. Astrue*, 621 F.3d 1269, 1274 (10th Cir. 2009) (citation omitted). The Tenth Circuit in *Trimiar v. Sullivan*, 966 F.2d 1326 (10th Cir. 1992), established that "[t]his Circuit has never drawn a bright line establishing the number of jobs necessary to constitute a 'significant number' and rejects the opportunity to do so here." *Id.* at 1330. Rather, an ALJ must explicitly set forth a discussion of the factors identified above in determining that the number of jobs a claimant can do exist in significant numbers and an ALJ's finding is sufficient if the record supports a conclusion that the ALJ used a common sense approach in "weighing the statutory language as applied to a particular claimant's factual situation." *Johnson v. Colvin*, 2014 WL 4215557, at *3 (10th Cir., Aug. 14, 2014). As this Court has ruled in the past, given the imprecise nature of this analysis, this Court is unwilling to find that 260,000 represents an insignificant number of jobs. *See Rogers v. Astrue*, 312 Fed. Appx. 138, 141 (10th Cir. 2009) (testimony by vocational expert of 11,000 hand packager jobs in the national economy could be relied upon by the ALJ as substantial evidence to support a finding of non-disability); *see also Fox v. Colvin*, 2015 WL 5178414, at *4 (W.D.

13

Okla., Sept. 3, 2015) ("The *Rogers* [*v. Astrue*] decision came out the same year as *Raymond*, and that court implicitly found, as a matter of law, without engaging in a multi-factor analysis, that 11,000 jobs in the national economy is significant. The Court is persuaded by *Rogers* and finds that 32,000 utility tractor jobs in the national economy is significant."). Thus, the ALJ had substantial evidence to support his determination that there was a significant number of jobs for Claimant in the national economy.

### Reliance on the Grids

Claimant argues that if the ALJ had properly considered his physical and mental impairments in the RFC, she would have applied the appropriate rule under the grids, limiting Claimant to sedentary work, which based on his age, education, inability to perform past relevant work, and no transferable skills, would have directed a finding of disability.

The ALJ, however, determined Claimant had a light RFC and included additional postural, environmental, and mental limitations. She related the RFC to the VE, which included only those limitations she determined were supported by the evidence. *See Talley v. Sullivan*, 908 F.2d 585, 588 (10th Cir. 1990) (finding that in positing a hypothetical question to the VE, the ALJ need only set forth those physical and mental impairments accepted as true by the ALJ). The hypothetical questions to the VE included those limitations found to exist by the ALJ and included in the

RFC. *See Qualls*, 206 F.3d at 1373 (finding an ALJ's hypothetical questioning of the VE provided an appropriate basis for a denial of benefits because the question "included all the limitations the ALJ ultimately included in his RFC assessment."), citing *Gay v. Sullivan*, 986 F.2d 1336, 1341 (10th Cir. 1993). Thus, the ALJ was not required to apply the grids for sedentary work because she determined Claimant could perform light work with nonexertional limitations. *See Daniels v. Apfel*, 154 F.3d 1129, 1135 (10th Cir. 1998) (application of grids precluded when the claimant's characteristics do not precisely match the criteria of a particular rule).

### Step-Five Determination

Claimant further argues that the ALJ failed to properly consider Claimant's limited ability to communicate in English and the effect on his ability to perform work at step five of the analysis. He asserts that the three jobs identified by the VE require English literacy skills that he does not possess, and the ALJ failed to apply the proper regulatory factors when determining he could communicate in English. He contends there was no hearing testimony regarding his ability to write and read English upon which the VE could rely.

In addition to considering the RFC in determining if there are a significant number of jobs a claimant can perform in the national economy at step five, the ALJ must also consider the

vocational factors of age, education, and work experience. *See* 20 C.F.R. § 404.1560(c). "The vocational factor of education includes whether a claimant is illiterate and whether [he] has the ability to communicate in English[.]" *Preciado v. Colvin*, 2015 WL 1508917, at *3 (W.D. Okla., Mar. 31, 2015). In evaluating a claimant's education level and the work he can do, the applicable regulation provides that certain categories are considered, including illiteracy, marginal education, and the inability to communicate in English. *See* 20 C.F.R. § 1564(b).

The record reveals that Claimant reported in his disability report that he could not speak and understand English or read and understand English. (Tr. 309). Yet, he also indicated that he was able to pay bills and count change. (Tr. 331). When Claimant was examined by Dr. Fullenwider in August of 2016, he attended the examination alone, and although Dr. Fullenwider referenced that Spanish was Claimant's primary language and there was "some difficulty in communication," he was able to complete a report of the examination. (Tr. 1239-42). At his psychological examination with Larry Vaught, Ph.D., Claimant was able to communicate with Dr. Vaught, with Dr. Vaught noting that although Claimant had a "heavy Spanish accent," his "speech intelligibility [was] fair," and he determined Claimant would be able manage any benefit payments. (Tr. 30, 1250-53).

In the decision, the ALJ noted Claimant's indication on his function report that he did not do well with written instructions, but he did well with spoken instructions. (Tr. 24, 367). At the hearing, at which the VE was present and participated, Claimant testified with assistance from a Spanish interpreter. He testified he studied up to sixth grade in his country (Tr. 53), which the ALJ concluded was a marginal education. (Tr. 31). When discussing his understanding of English at the hearing, Claimant's attorney indicated he was able to communicate with his client prior to the hearing. When asked if Claimant could understand English, his attorney replied that "[h]e understands a significant amount of English, but I'm also fluent in Spanish." (Tr. 47). When questioning Claimant, the ALJ asked him if he considered himself illiterate, meaning was he "unable to read, write or count money[.]" Claimant responded, "No, I am not illiterate, um – I try my best." (Tr. 53).

Upon questioning by the ALJ, the VE testified she had reviewed several exhibits, including Claimant's disability report. (Tr. 65). When giving the VE the first hypothetical question, the ALJ told her "to assume someone of the same age, education, and past work as the claimant[.]" *Id*. The ALJ indicated the second hypothetical was the same as the first, except for the additional limitations added. (Tr. 67). The ALJ previously asked the VE to advise her if there was a conflict between the Dictionary of

17

Occupational Titles and the VE's testimony. (Tr. 64). Based on both hypothetical questions, the VE testified Claimant could perform the jobs of bakery worker, small product assembler, and produce sorter. (Tr. 66-67).

The Court views the cases cited by Claimant as distinguishable from the present case. In *Muniz v. Berryhill*, 2018 WL 4635032 (W.D. Okla., Sept. 27, 2018), the ALJ included in the RFC that the claimant could not perform tasks requiring reading or speaking in English and that he could not follow written or spoken instructions in English. *Id*. at *3. Here, Claimant specifically testified he was not illiterate, and he reportedly did well with spoken instructions. In *Preciado v. Colvin*, 2015 WL 1508917 (W.D. Okla., Mar. 31, 2015), the ALJ did not include in the hypothetical question to the VE that the claimant was illiterate. *Id*. at *4. Again, Claimant testified in this case that he was not illiterate.

This Court finds no error in the ALJ's questioning of the VE. The VE was present for Claimant's testimony and therefore heard testimony that Claimant could understand a "significant amount of English," and Claimant's own testimony that he completed school up to the sixth grade and was not illiterate. Accordingly, considering Claimant's age, education, and work experience, the ALJ's conclusion that Claimant could perform the jobs of bakery worker, small product assembler, and produce sorter is supported by substantial evidence. (Tr.32).

**Conclusion**

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, this Court finds, in accordance with the fourth sentence of 42 U.S.C. § 405(g), the ruling of the Commissioner of Social Security Administration should be and is **AFFIRMED.**

IT IS SO ORDERED this 14th day of April, 2021.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE